

**SIGNED this 29th day of October, 2012**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

In re:

STEVE A. MCKENZIE,

        No. 08-16378
        Chapter 7

      Debtor;

C. KENNETH STILL, Trustee,

      Plaintiff,

v.

        Adversary Proceeding
        No. 11-1116

GRANT, KONVALINKA, & HARRISON, P.C.

      Defendant.

## MEMORANDUM

The Plaintiff, C. Kenneth Still ("Trustee") has filed a motion for partial summary judgment ("Motion") in this adversary proceeding on the issue of whether the statute of limitations imposed by 11 U.S.C. § 546(a) may be tolled in this case. [Doc. No. 19].[1] In this adversary proceeding the Trustee has filed an objection to the claim of GKH pursuant to 11 U.S.C. §§ 506(d) and 544(a) and has filed claims to set aside and void transfers pursuant to 11 U.S.C. §§ 547 and 548, as well as a claim to subordinate GKH's claim pursuant to 11 U.S.C. § 510. It is undisputed that the Trustee failed to file an avoidance action within the two year statute of limitations period set forth in 11 U.S.C. § 546(a).  The Trustee argues that the doctrine of equitable tolling is applicable because of misrepresentations by GKH that lulled the Trustee into inaction, and therefore the Trustee's claims under § 547 and § 548 are not barred by the statute of limitations.

The defendant Grant, Konvalinka & Harrison, P.C. ("GKH") opposes the motion for partial summary judgment. [Doc. No. 22]. GKH argues that there are genuine issues regarding material facts that preclude granting a motion for summary judgment. Specifically, it contends that its conduct in the bankruptcy case was not misconduct which would justify the application of equitable tolling. Second, if its conduct did not rise to that level of misconduct, then GKH argues that the Trustee's due diligence was so inadequate that he does not deserve the application of equitable tolling to preserve his avoidance actions. Finally, GKH argues that the decision on whether equitable tolling is applicable requires the court to weigh the evidence and draw inferences from disputed facts which the court should do only at trial.

With this motion, there is another consideration beyond those standards typically reviewed for a motion for summary judgment such as whether there are disputed facts and how

---

[1] All docket entry references refer to docket entries for Adversary Proceeding No. 11-1116, unless otherwise noted.

inferences should be drawn from undisputed facts. This court must also consider the undisputed

fact that the issue of the applicability of equitable tolling to GKH's conduct has already been

litigated by these two parties in this bankruptcy case in a contested matter finally decided on

December 9, 2011 ("Stay Relief Matter"). [Bankr. Case No. 08-16378, Doc. No. 1605]. In the

Stay Relief Matter, the court found that compelling equitable considerations existed to apply

equitable tolling to the Trustee's avoidance claims raised in this adversary proceeding. For the

reasons stated below and based on its prior ruling in the main bankruptcy case on the issue of

equitable tolling in the Stay Relief Matter, the court finds that the Trustee's motion should be

GRANTED.

These are the court's findings of fact and conclusions of law in accordance with Fed. R.

Bankr. P. 7052 following the court's review of the Trustee's motion, GKH's response, the

briefing of the parties, the record and the applicable law.

I.      **Background**

A.      **Equitable Tolling Issue in the Stay Relief Motion**

By way of background, on March 7, 2010, GKH filed a motion for relief from the

automatic stay ("Stay Relief Motion") so that it could pursue thirty-nine interests in various

limited liability companies, corporations and partnerships ("Pledged Interests") owned by Steve

A. McKenzie ("Debtor"), which the Debtor pledged to GKH prior to his bankruptcy. [Bankr.

Case No. 08-16378, Doc. No. 1065]. The security interest in the Pledged Interests is the lien that

the Trustee is seeking to avoid in this adversary proceeding. The Trustee opposed the Stay Relief

Motion on the basis that the security interests were not perfected and that the transfer of the

security interests was avoidable. [Bankr. Case No. 08-16378, Doc. Nos. 1229, 1230]. GKH

replied that the Trustee no longer had any avoidance powers since no avoidance action had been

filed during the two years following the entry of the order for relief on January 21, 2009. [Bankr.

Case No. 08-16378, Doc. Nos. 1245, 1271]. The Trustee argued that equitable tolling was likely

to apply because of GKH's conduct in failing to disclose its security interests until after the two

year period had expired. [Bankr. Case No. 08-16378, Doc. No. 1262].

On May 27, 2011 this court issued Part I of its decision regarding GKH's Stay Relief

Motion. [Bankr. Case 08-16378, Doc. Nos. 1287, 1288]. Part I of the decision addressed issues

related to the identification of the collateral and reserved the issues related to equitable tolling.

The court hereby adopts and incorporates its previous findings of fact from this prior opinion.

[Bankr. Case No. 08-16378, Doc. No. 1287, pp. 3-11]. The court granted the motion in part and

denied it in part. *Id.* It further explicitly reserved the issue of equitable tolling:

> [t]he remaining issues of whether the trustee may use his status as a hypothetical
> lien creditor to defeat the transfer of the A List Interests or may still challenge the
> entire pledge because the statute of limitations was equitably tolled, will remain
> under advisement. . . . Both sides have prepared excellent briefs which have been
> very helpful to the court. . . . With respect to equitable tolling, they have provided
> authorities that demonstrated a broad range of policy issues for the court to
> consider in determining whether to allow equitable tolling in light of the proof
> presented. The court will continue to hold those matters under advisement until
> the record is supplemented . . . .

[Bankr. Case 08-16378, Doc. No. 1287, p. 17].

On July 21, 2011, at a hearing where counsel for the Trustee and GKH were present, the

court inquired about whether the parties were going to file briefs regarding equitable tolling in

the Stay Relief Motion. Mr. Farinash initially indicated that he did not expect the court to rule on

that issue while Mr. Konvalinka indicated that he expected that equitable tolling would be

addressed. July 21, 2011 Hearing at 10:37-10:44 a.m., Hearing Transcript, pp. 4-8. Shortly

thereafter, the Trustee filed this adversary proceeding on July 28, 2011. *See* [Doc. No. 1,

Complaint].

4

On the same day, July 28, 2011, at another hearing held on discovery issues in other

contested matters in this case,[2] the parties indicated to the court that one of the issues on which

discovery was being sought was the issue of equitable tolling. The existence of this Adversary

Proceeding No. 11-1116 was brought to the court's attention and the court had the following

discussion with the parties regarding whether the equitable tolling issue should be heard with

Stay Relief Matter or this adversary proceeding.

> MR. KONVALINKA:  Good morning, Your Honor.  These are obviously
> our motions for 2004 examinations of Richard Banks and Scott LeRoy with
> regard to our motion for relief of stay regarding the security interests of a secured
> claim that we have in connection with the bankruptcy.  I don't know what the
> Court would like me to address.  I mean I saw the objections.
>
> . . . Now with regard to Mr. LeRoy's objection, there seems to be some concern, I
> guess, that with regard to the adversary proceeding that somehow this may bleed
> over into the adversary proceeding.  Again, I intend to do a 2004 exam as it
> relates to the motion for relief.  As the Court is well aware, there has been a 2004
> examination of the firm of Grant Konvalinka & Harrison with regard to this same
> motion.  And, in fact, Mr. Farinash and I have agreed with regard to an order of a
> 2004 of exam with C. Kenneth Still with regard to this same motion.  Thank you.
>
> THE COURT: All right.  Mr. Konvalinka, let me ask you, with respect to
> the agreed orders, have you-all agreed to any parameters for that as it relates to
> the motion for relief?
>
> MR. KONVALINKA: We just said as it relates to the motion for relief.
>
> THE COURT:  Motion for relief.
>
> MR. KONVALINKA: I'm fairly confident that Mr. Farinash would be the
> first to tell me if I should stray from that topic.  . . .  But I intend to stay with
> regard to the motion.
>
> THE COURT: All right, but that is your intention that it does relate to that
> one motion for relief?
>
> MR. KONVALINKA: And I don't mind that order reflecting that.
>
> THE COURT: All right.
>
> . . .

---

[2] The contested matters being heard that day were GKH's motions for 2004 Examinations of F. Scott LeRoy and
Richard Banks and the objections to those motions. [Bankr. Case No. 08-16378, Doc. Nos. 1328, 1329, 1332, 1333].

MR. POWERS: Your Honor, that was our, you know, our primary concern. And we had attached a little e-mail correspondence where we had tried to get some information, just a little bit of sense of, you know, what information do you need? we might be able to provide this information to you. And didn't really get much, you know, in the way back other than if it relates to the motion for relief, then that's what I'm going to ask about.

There's been – and I don't know if Mr. Konvalinka is aware of this – frankly, I was getting ready to walk out the door and at 9:30 this morning there was an adversary proceeding that was filed by the trustee against the – Mr. Konvalinka's firm as it relates to the motion for – as it relates to their security interest in this property. And, Your Honor, I think in light of that, I think the – the 2004 Examination, it should be quashed, should not be – the motion should not be granted because that is going to be exactly what the issue is in that adversary proceeding. And the language that we cited from *Nortons*, I think is really directly on point. The *Nortons'* language says, The examination under this Rule, which would be Rule 2004, is not a substitute for discovery authorized in an adversary proceeding by these rules. So, I mean, that's gonna – that is the very issue in the adversary proceeding that was filed. Again, it's document no. 1364 in the underlying bankruptcy that was literally filed this morning. The time stamp on it is 9:36. So I printed it as I was walking out the door to head over here. So, again, I don't – I don't – I don't know if Mr. Konvalinka is aware of this or not. But under those circumstances we think that there's no need for a 2004 exam. It can – those depositions can take place in the adversary proceeding.

THE COURT: All right. Let me ask you though, Mr. Powers, if you were to receive— other than the objection you have just raised but with respect to restricting this to simply the issues which relate to the motion for relief, which you do have to do--  at least from the Court's interpretation of the issues that remain outstanding are: the issues of the validity of the security interest, whether the trustee may use his status defensively, and, finally, *whether equitable tolling is appropriate*. If the examination were limited to that, would that resolve your concerns about the breadth of the examination?

MR. POWERS: Yes, Your Honor, it would.

THE COURT: All right, thank you.

MR. PIPPENGER: Your Honor, I'm Andy Pippenger here for Mr. Banks. And I think – I have nothing to add. I would say that Mr. Banks, we had the same concern over the scope of the examination. And that is why we filed the – the objection that we filed. The – I think the ambiguity and the scope of the examination is what led us to do that. We have no objection to a 2004 Examination along the lines over the restrictions that the Court just described. We have no problem of a 2004 Examination on those topics and agree.

I would, however, reiterate, I think that Mr. Powers' point is very well taken about this last-second development. In a sense it seems that turns the matter

on its head with this adversary proceeding that was just filed an hour and a half ago, that if that adversary proceeding it concerns and relates to the same matters that we now know that Mr. Konvalinka wants to examine Mr. Banks about, that it seems that takes it beyond the scope of a 2004 Examination, according to the – to the authority that Mr. Powers just cited the Court.

THE COURT: All right.  I did read your response, really as almost having more concern about the motion for leave than it had to do with the Bradley County motion.  . . . But I did not – I did not see in your reply that you were really raising issues with respect to what we are calling the '362 Motion'.  But, as I hear you today, that if the scope is limited so that it does not bleed over into that other matter, you would be fine with that, but for this development this morning?

MR. PIPPENGER: Yes, Your Honor.

THE COURT: All right.  Mr. Konvalinka, do you have a response?

MR.  KONVALINKA: Your Honor, in fairness, I was told when I – by Mr. Cash this morning when I arrived that there was some complaint filed.  I have not reviewed the complaint.  But – and, again, what the Court has outlined is what I intend to ask about, so . . .

THE COURT: With the filing of that adversary proceeding, the Court is sort of presented with a chicken-and-egg [situation]. I did have a hearing last week in which I had Mr. Konvalinka and Mr. Farinash in the court addressing adding some exhibits.  At that time I did ask them – and it does appear that there has been some confusion with respect to what remains open on the 362 Motion.  To that end, I have – I will just give you all a heads up—I have prepared an order, sort of part 1(a) to what I had previously filed.  *And I have determined that I am going to grant Mr. Farinash's request for additional time to address equitable tolling.  I feel like the whole issue needs to be resolved at one time.  The 362 Motion is ahead of the adversary proceeding.*  And I am looking at – basically the time schedule I am looking at—is to provide Mr. Farinash with an additional time period through the end of August to complete whatever discovery he would like on that equitable tolling issue so that we can get it all addressed at one time. *And I do think if we are addressing it there then it will have an impact on the adversary proceeding.*  If the parties want me to combine part of it, I will be happy to entertain something on that.  But I do need to go ahead and get this 362 Motion resolved.

My thought would then be to give Mr. Konvalinka some additional time to respond, to complete his discovery, any additional briefing on the UCC issue or equitable tolling.  There was also some misunderstanding about when that briefing would be due.  It would be due after that period.  And I am looking to set an evidentiary hearing sometime in October.  If the parties have a date, since I happen to have everybody here.

7

Hearing, July 28, 2011, 10:56-58 a.m., Hearing Transcript, pp. 3-6 (emphasis added). The court

then set a hearing on GKH's motion for relief from the automatic stay for October 24, 2011 to

allow the parties time to complete discovery relating to the doctrine of equitable tolling.

Due to the amount of confusion surrounding the reservation of the equitable tolling issue

and the issues remaining under advisement, the court issued an order clarifying the remaining

issues to be determined at the October 24, 2011 hearing. [Bankr. Case No. 08-16378, Doc. No.

1373]. In that order the court explained:

On July 21, 2011, the court conducted a hearing on unrelated motions in
the case. Counsel for GKH and counsel for the Trustee were present. At that time,
the court, concerned that there had been a misunderstanding about the need for
additional time, inquired whether either party intended to file any additional
pleadings with respect to the Motion for Relief, especially in light of the motions
filed shortly before and after the May 24, 2011, hearing, which sought to take
additional discovery on topics central to the issues raised in the Motion for Relief.

Counsel for GKH indicated that he had understood the court's granting of
the trustee's motions for Rule 2004 examinations and the trustee's continued
discovery on the status of GKH's claim to mean that the court was allowing
discovery to continue and that additional briefing could be done upon completion
of discovery. Counsel for the trustee represented that he was continuing discovery
to determine whether there was a basis for objecting to a claim and filing an
avoidance action based on the equitable tolling of the limitation of 11 U.S.C. §
546. He also represented that he had not asked the court for a ruling on equitable
tolling, but directed the court to his request for 90 days to investigate whether
raising equitable tolling was appropriate. *See* "Objection to Grant, Konvalinka &
Harrison, P.C.'s Motion for Relief from Automatic Stay and Abandonment of
Collateral" [Doc. No. 1229 at 3-4]. The subject of equitable tolling was argued in
GKH's "Reply to Trustee's Objection to Grant, Konvalinka & Harrison, P.C.'s
Motion for Relief from Automatic Stay and Abandonment of Collateral"
("Reply") at 4-7 [Doc. No. 1245].

Based on the foregoing chronology of events, the representations of the
parties on July 21, 2011, and the confusion about whether the issue of equitable
tolling has been raised, the court finds that a clarification of the status of the
proceeding and a ruling on the trustee's request for additional time to investigate
equitable tolling is appropriate to ensure that both sides may fully address the
issue of whether the statute of limitations contained in 11 U.S.C. § 546 should be
equitably tolled under the circumstances of this case. . . .

It is therefore ORDERED that:

8

> 1.      The trustee's request for an additional period of time to conduct discovery and to supplement his evidence on the subject of equitable tolling is GRANTED. The trustee shall have through September 15, 2011, to complete his discovery on the issue of equitable tolling and the other subjects recited in the trustee's motions for 2004 examinations of Nelson Bowers, II, and Steve Dillard.
>
> 2.      GKH shall have until September 15, 2011, to complete its discovery with respect to the issues related to the Motion for Relief.
>
> 3.      Any supplemental briefs and exhibits on any issues remaining to be resolved in the Motion for Relief shall be filed by October 10, 2011. The briefs shall not exceed 25 pages.
>
> 4.      The court shall conduct an additional evidentiary hearing with respect to the following issues: (a) whether the facts in this case equitably tolled the trustee's deadlines either to file an action seeking to avoid the lien of GKH in the Pledged Interests or to challenge the validity of the claim such that if those causes of action remain, then those grounds would still exist to deny the motion for relief, . . . .
>
> 5.      The hearing shall be held on October 24, 2011, at 9:00 a.m., in Courtroom A, Historic United States Courthouse, Chattanooga, Tennessee.

*Id.*

Following a period for discovery, the parties had the opportunity to brief the issue of equitable tolling and present evidence at a hearing on the Stay Relief Motion on October 24, 2011 ("Stay Relief Hearing"). [Bankr. Case No. 08-16378, Doc. No. 1550, Supplemental Memorandum in Suport of Trustee, C. Kenneth Still's Opposition to Grant, Konvalinka & Harrison, P.C.'s Motion to Lift Stay; Doc. No. 1551, Supplemental Brief in Support Motion for Relief from Automatic Stay; Doc. No. 1559, Hearing Held Motion for Relief from Stay and Abandonment of Membership Interests and/or Stock Interests].

### B.      Second Stay Relief Ruling on Equitable Tolling

The court entered its second opinion addressing the Stay Relief Motion on December 9, 2011. [Bankr. Case No. 08-16378, Doc. No. 1605]. The court hereby adopts and incorporates its previous findings of fact from the December 9, 2011 Opinion relating to the Stay Relief Motion [Bankr. Case No. 08-16378, Doc. No. 1605, pp. 10-29].

In its second opinion entered on December 9, 2009, the court addressed the applicability

of the doctrine of equitable tolling with respect to the facts pertaining to the Trustee's avoidance

claims:

> The considerations which must be balanced in this case to determine
> whether to apply equitable tolling are not easily weighed. If the court looks only
> to the factors for the application of equitable tolling,[3] the trustee cannot meet his
> burden.  The trustee, an experienced bankruptcy professional, knew that that he
> had two years to bring an avoidance action. His counsel and his accountant were
> aware that the debtor signed pledge agreements conveying a number of his equity
> interests to GKH.  Both have extensive experience in bankruptcy matters.  The
> financing statements evidencing the security interests were of record in the office
> of the Tennessee Secretary of State. The trustee and his professionals were
> specifically aware that one or more deeds of trust in favor of GKH had been filed
> shortly before the involuntary was filed. He and his attorney were also aware that
> GKH was not responding to inquiries about its claim or the release of the deed of
> trust. If GKH had never responded when questioned or had failed to file any claim
> at all, even though required by local rules to do so, its silence would not be
> enough to justify equitable tolling. *In re Dill,* 2008 WL 2357237, at * 4-5.

> However, there is more to be weighed in this case than a failure to conduct
> due diligence on the part of the trustee against a failure to respond on the part of
> GKH. GKH made affirmative representations in the record which contradict its
> current position that it has a security interest in the Pledged Interests. Where there
> are compelling equitable considerations, the Sixth Circuit finds an exception to
> the rule, and the court may allow equitable tolling. In those situations, the court
> may consider the propriety of equitable tolling on a case by case basis.

> The trustee argues that compelling equitable considerations exist. Mr.
> LeRoy testified that the early days of this case were "chaotic" and "hectic."
> LeRoy Testimony, October 24, 2011 at 10:26 a.m.  The court will take judicial
> notice that the schedules reflect that the debtor owned many interests and ran
> multiple businesses from real estate developments to bowling alleys. In the midst
> of this workload, the court finds that Mr. LeRoy failed to appreciate and to act on
> the London Email.[4] He mistakenly concluded that GKH's collateral was only real
> estate.  However, the court also finds that the debtor, the debtor's professionals,
> and GKH reinforced that mistaken belief. One of the main sources for a trustee to
> analyze preferential transfers is the debtor's Schedules and Statement of Financial
> Affairs. In this case, they were inaccurate.  The transfer of the debtor's member

---

[3] The ruling is referencing factors noted in *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2002).
[4] The London Email is an email sent to the Trustee's counsel by the Trustee's accountant on March 17, 2009, which
forwards an email from the Debtor's assistant regarding the transfer of a security interest to GKH. The forwarded
email contains copies of partially executed security documents between GKH and the Debtor. The London Email
was Exhibit 14 at the Stay Relief Hearing.

interests was not listed on the debtor's schedules despite the debtor's very
experienced legal counsel being aware of the granting of the security interest.
Kyle Weems Testimony, October 24, 2011at 10:02-10:03 and 10:35- 10:15 a.m.

The trustee and his counsel contend that they diligently pursued the
interests in this case, but were diverted or misled by GKH. As evidence of their
diligence, the trustee and his counsel met with three members of GKH
approximately a month after the London Email was sent to discuss GKH's
representation of parties other than the debtor in the case going forward. The
parties have differing recollections of what was discussed at the meeting in April
when the issue of GKH's claim and security interest was raised. Even the three
members of GKH do not agree about what was discussed. Mr. Anderson is the
only person who clearly recalls that he discussed the security interest **and** the
deed of trust, but even he seems to have forgotten the existence of the security
interests when he signed the Motion to Sell the TIPCO interests approximately
seven months later.

Shortly after the April 2009 meeting, Mr. Cash, who was present at the
meeting at which Mr. Anderson claims he discussed the security agreement and
deed of trust, signed and filed the Claim on behalf of GKH. Completing the
official form, he describes the collateral in box 5 as "Promissory Note and Deeds
of Trust for Properties Located in Hamilton, Bradley and Sevier Counties." No
supporting documents were attached as requested in No.8 in the form. There is no
explanation why the documents are not available. There is no contention that the
documents were too voluminous to attach. Mr. Cash testified that he did not see
the Pledge Documents at this time, but the court notes that he was aware that the
"date debt was incurred" was October 24, 2008, the date of the Demand Note, not
the date the legal services were first provided. Despite the fact that fully executed
and recorded Pledge Documents were in the possession of GKH at the time Mr.
Cash filed the GKH Claim, they were not attached to nor referenced in the Claim.
The Claim remained without any indication that there was a security interest in
any personal property until after the expiration of the statute of limitations.

The Claim is not the only instance in which GKH made a representation
contrary to its current position. In the TIPCO sale in April of 2010, Mr. Anderson
was involved in preparing the original Sale Motion on behalf of Mr. Bowers and
signed the Sale Motion alleging that there were no other liens on those interests.
Counsel for the debtor alleged that Mr. Anderson or GKH had an ownership
interest in these entities. Mr. Konvalinka, who made a limited appearance on
behalf of Mr. Bowers, testified at the May 2010 hearing about TIPCO and ETIP's
corporate status.  When asked about whether his firm owned any interest in the
two entities, Mr. Konvalinka responded that he was not aware that it did. Exhibit
11, John Konvalinka Testimony, May 25, 2011, Hearing at 7. A determination of
whether this response was misleading or merely careful depends on whether the
listener focuses on the words *any interest* or the word *own*.  However the response

is interpreted, the testimony did not leave the court with the impression that GKH itself had any interest in the transaction before the court.

The debtor, refusing to give up on his allegations regarding GKH's or Mr. Anderson's financial interest in the real property or the entities being sold, filed a motion to reconsider the court's order in which he alleged that "John Anderson did, at the time he signed the order approving the sale of my interest in this property, have a financial interest in that property." [Affidavit of Steve A. McKenzie, in support of motion to reconsider, Doc. No. 834-1,¶7]. The court held a hearing on October 22, 2010, on the motion to reconsider its order on the motion to vacate. One of the issues at that hearing was whether GKH or John Anderson had an ownership interest in TIPCO or ETIP or in the acreage owned by ETIP. Mr. Anderson testified that neither he nor his firm currently had an **ownership** interest in TIPCO or ETIP. Contrary to his Testimony at the October Hearing, Mr. Anderson did not seek a clarification of the question about ownership to insure that his answer was accurate.

On February 7, 2011, approximately three weeks after the two year period ran, Mr. Banks, as counsel for the debtor, filed an objection to the GKH Claim for failure to file documents and disputing the amount owed. The objection was supported by an affidavit by the debtor. [Doc. No. 1003]. In response to the objection, GKH filed the Amended Claim on February 9, 2011, for $750,000 and attached the Pledge Documents. [Doc. No. 1006]. Despite the numerous hearings in the case involving the Pledged Interests, the Claim was not amended until there was an objection brought by the debtor.

The Amended Claim still has no detail of the services provided or whether those services were performed for the debtor or one of his companies. It reflects the amount owed as $750,000 although the parties stipulated for purposes of the October Hearing that the debt was only $486,828.51. Exhibit 39, Stipulation, ¶ 1. Mr. Cash testified that the number he inserted in the Amended Claim came from Mr. Konvalinka rather than GKH's business office.

At the October Hearing, the trustee also questioned the members of GKH about their failure to assert their liens at other times in the case. The trustee specifically questioned the GKH members about the sale of the assets of SAM Management, the answer of GKH in adversary proceeding no.10-1407 involving CAM, and the answer to the complaint to obtain turnover of documents from GKH's records. GKH responded that there was nothing in those matters that required a disclosure of the security interest. The court agrees with GKH that, taken individually, nothing in those specific matters required an affirmative disclosure of GKH's security interest. However, those matters provided opportunities to correct the affirmative representations that had been made. For that reason the court has considered GKH's failure to raise its security interest until after the statute of limitations had run in its evaluation of whether compelling equitable considerations exist.

The court finds that GKH's conduct related to the assertion of its security interest in this case rises to the level of a compelling equitable consideration that would allow the court to apply the doctrine of equitable tolling. Therefore, the possibility of the trustee avoiding the security interest remains, and the motion for relief will be denied.

[Bankr. Case No. 08-16378, Doc. No. 1605, pp. 48-53 (citing *Newton v. Wells Fargo Financial, Inc. (In re Dill)*, No. 07-3125, 2008 WL 2357237 (Bankr. E.D. Tenn. June 3, 2008)].

### C.   Affirmance of the Stay Relief Ruling on Equitable Tolling

The court's ruling was appealed by GKH and affirmed by the District Court on October 2, 2012. The District Court found that:

> [a]lthough some facts are disputed, the Court cannot say it is "left with the definite and firm conviction that a mistake has been committed." The bankruptcy court has had a unique vantage point throughout the debtor's bankruptcy proceedings to engage with the parties, hear testimony, and observe the parties' conduct in a manner that this Court is not privy to except through written transcripts. As a result, the bankruptcy court's assessment of the parties' conduct is properly given deference, especially when the court avers a party—here, GKH—made affirmative misrepresentations or engaged in misleading behavior. Based on the bankruptcy court's findings of fact, the Court concludes the bankruptcy court acted in accordance with the law when it decided to equitably toll the statute of limitations. Moreover, the bankruptcy court identified circumstances warranting tolling in this case even though the Trustee was not without fault.
>
> Accordingly, the bankruptcy court did not abuse its discretion when it equitably tolled the statute of limitations.

*In re McKenzie*, Nos. 11-cv-192, 11-cv-274, 11-cv-025, 2012 WL 4742708, at *12 (E.D. Tenn. Oct. 2, 2012) (citing *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)).

### D.   The Trustee's Motion for Partial Summary Judgment

Prior to this court's ruling on the Stay Relief Motion, the Trustee filed this adversary proceeding on July 28, 2011 to avoid the lien of GKH in the Pledged Interests. GKH has raised the affirmative defense of the statute of limitations. [Doc. No. 5, Answer to Complaint, p.11].

This Motion, filed on August 8, 2012, while the court's decision on the Stay Relief Motion was

on appeal, asks the court to apply the doctrine of equitable tolling in this adversary proceeding

by granting this motion for partial summary judgment.

In reviewing the facts which the parties have provided for the court to consider, the

Trustee relies on the findings of fact contained in this court's Memorandum Opinions dated

December 9, 2011 [Case No. 08-16378, Doc. 1605] and May 27, 2011 [Case No. 08-16378, Doc.

1287] and two exhibits included with the Trustee's Memorandum in Support of Plaintiff's

Motion for Partial Summary Judgment. [Doc. No. 20]. Exhibit 1 to the Trustee's Memorandum

is an excerpt from a transcript of the preliminary hearing on GKH's Motion for Relief from the

Stay held on April 1, 2011. It includes a statement made by John Konvalinka regarding the two

year limitations period and the reason GKH did not file a motion for relief at an earlier date.

Exhibit 2 is a transcript of the testimony of Mimi Perelle from the Stay Relief Hearing on the

Motion for Relief from the Automatic Stay held on October 24, 2011 ("Stay Relief Hearing").

GKH's opposition also relies on the testimony from the Stay Relief Hearing for the

majority of its evidence in opposition to the Motion. Seven of the eight exhibits supporting its

opposition are portions of the transcript from the Stay Relief Hearing. The eighth exhibit consists

of statements of counsel for the Trustee and counsel for a bank made in another contested matter

in this case conducted on May 25, 2010. The contested matter involved the sale of the Debtor's

stock in an entity called Tennessee Interstate Properties, Inc. ("TIPCO") and its subsidiary East

Tennessee Interstate Properties, LLC ("ETIP"). In the excerpts, the attorneys describe the

Trustee's efforts to sell a tract of land in Cleveland, Tennessee and the corporate structure of the

entities related to or owned by the Debtor involved in the sale. While the court finds the

testimony is helpful in clarifying that ETIP is a subsidiary of TIPCO, and that the only interest

14

belonging to this Debtor is stock in TIPCO, the court does not find that there is any material

dispute on this point between the parties, or that this transcript adds any new evidence to that

considered at the Stay Relief Hearing.

  **E.  Existence of Disputed Facts and Differing Inferences**

   There is no doubt that the facts provided to the court at the Stay Relief Hearing were

disputed.  The Trustee and GKH disagreed about why GKH obtained a security interest– whether

the transfer was prompted by the Debtor's desire to protect assets from creditors and his

attorney's willingness to help or whether it was the result of an unsolicited offer by the Debtor to

ensure continuing legal services. After the bankruptcy filing, the parties disputed whether the

Trustee actually knew of GKH's security interest in the Pledged Interests or should have known

of the Pledge Agreements' existence based on the London Email. They disagreed about what the

Trustee meant in his comment to Harry Cash in March of 2009 about whether GKH would "set

aside [its] security agreement so he [didn't] have to sue them." They disputed what John

Anderson, a director of GKH,  said to Scott LeRoy at a meeting on April 8, 2008 about GKH's

security interests in personal property serving as collateral. They disagreed about the inferences

to be drawn from the omission of the Pledged Interests from Claim 86-1 – whether the omission

was an act of concealment or a simple mistake. They disagreed about whether GKH should have

corrected the omission before the statute had run and what inferences should be drawn from the

timing of the amendment fully disclosing all of GKH's collateral interest after the two year

statute had run. Even this list does not catalogue all of the differences between the parties' view

of the facts and how a trial court should interpret them.

## II.      Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. The general rule is that summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts, and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th  Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Despite all of the disputed facts, there is no genuine dispute that all of the evidence now provided in support of and in opposition to the present motion, which GKH contends should be weighed and considered in the light most favorably to GKH,  has already been weighed and considered by this court. [Bankr. Case No. 08-16378, Doc. No. 1605]. Furthermore, the conclusions reached by this court on this issue have been appealed by GKH and affirmed by the District Court. *In re McKenzie*, 2012 WL 4742708. It is this chain of events that leaves no genuine issue of material fact to be reviewed regarding the application of the doctrine of equitable tolling, despite the parties' rearguing of the merits of their disputes.

Neither party has added any new evidence for the court to consider that was not offered at the Stay Relief Hearing or was testimony from hearings held well in advance of October 24, 2011. Therefore, the first question for this court is whether this court can, or should, reweigh the evidence using the standard to be applied to a motion for summary judgment. Application of

such a standard at this point in the bankruptcy case would require this court to view the facts in the light most favorable to GKH and to draw all the inferences from those facts in a manner favoring GKH regardless of its previous analysis. The court finds that the doctrine of the law of the case does not require it to reconsider its prior decision, even though one of the parties believes the decision was clearly erroneous. Nor does the doctrine justify denial of the Motion which would require the parties to retry an issue which they have already litigated both at trial and on appeal.

In its December 9, 2011 Opinion on the Stay Relief Motion, this court found that there were compelling equitable considerations that would allow a court to apply the doctrine of equitable tolling; and, consequently, cause existed to deny relief from the automatic stay. That finding was appealed by GKH. The district court found that the bankruptcy court had not erred in applying equitable tolling in this case and affirmed the bankruptcy court's ruling. *In re McKenzie*, 2012 WL 4742708, at *12. The Trustee now asks the court to find that there is no genuine issue of material fact and that he is entitled to the application of equitable tolling to extend his deadline to bring an avoidance action under § 548 and § 549 as a matter of law. The court has found that there are disputed facts about whether the Trustee had actual knowledge of the lien of GKH but still failed to file suit within two years.

Further, based on the parties' arguments regarding the facts that are not disputed, there are different inferences that can be drawn from those facts. In considering a motion for summary judgment, the court must "draw all reasonable inferences in favor of the non-moving party." *Patterson v. Hudson Area Schools,* 551 F.3d 438, 444-446 (6th Cir. 2009) (quoting *National Enterprises., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997)). The court recognizes that it could

make inferences of fact in favor of GKH based on the evidence presented that demonstrates the statute of limitations should not be equitably tolled and the Trustee's claims are barred.

Had this court not already conducted a hearing in which the Trustee and GKH appeared, briefed, presented evidence and argued these facts following a period for discovery, and had the court not already made findings of fact, drawn inferences from those facts, and issued its conclusions of law on December 9, 2011, the Trustee's motion for summary judgment would be denied based on the standard in *Patterson*. 551 F.3d at 444-46.  However, these two parties and the court have already been through this exercise in this case.

### III.    Analysis

### A.    This Court May Raise the Doctrine of Law of the Case *Sua Sponte*

Although the Trustee has not referred to the doctrine of the law of the case as a basis for this court to grant his motion for summary judgment, he has, however, incorporated the court's prior findings of fact in Memorandum Opinion dated December 9, 2011 [Bankr. Case No. 08-16378, Doc. 1605] and May 27, 2011 [Bankr. Case no. 08-16378, Doc. 1287] in support of the Motion. [Doc. No. 20, Trustee's Memorandum at 12]. GKH's opposition does not address the impact of the court's prior ruling on the Stay Relief Motion. Its only reference to this court's prior  ruling on the applicability of equitable tolling is in footnote 12. That footnote states that the Trustee's Motion "incorporates by reference the factual findings set forth by the Court in it [sic] Memorandum Opinions dated December 9, 2011 and May 27, 2011. GKH respectfully submits that its appeal of those Memorandum Opinions remains pending and requests the Court to consider the matters asserted herein in its consideration of Still's Motion." [Doc. No. 22, Response to Plaintiff C. Kenneth Still's Motion for Partial Summary Judgment at 19]. GKH reargues its position that the Trustee knew or should have known of the existence of its lien and

that no inferences should be drawn from its silence because none of the occasions cited by the court or the Trustee involved GKH's security interest.

Although neither party uses the phrase "law of the case," they both reference the court's decision, and GKH notes the appeal of that decision. There does not appear to be any intention by either party to waive reliance on the evidence presented at the prior hearing. Both parties use the evidence generated at the Stay Relief Hearing as their primary evidentiary support for the Motion. Therefore, the court finds that these references to the Stay Relief Matter ruling in both memoranda raise the issue of the applicability of the doctrine of the law of the case.

Even if they had not raised the issue, the court could, and does, raise the issue sua sponte. The Supreme Court recognized the court's power to do so in *Arizona v. California*, 530 U.S. 392, 408-412, 120 S.Ct. 2304, 2316–2318, 147 L.Ed.2d 374 (2000). *See* 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4405, fn 8 (2d ed. 2002). There, the Supreme Court stated:

> Finally, the State parties argue that even if they earlier failed to raise the preclusion defense, this Court should raise it now *sua sponte*. Judicial initiative of this sort might be appropriate in special circumstances. Most notably, "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *United States v. Sioux Nation*, 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (REHNQUIST, J., dissenting) (citations omitted).

*Arizona*, 530 U.S. at 412-413, 120 S.Ct. at 2318. Those special circumstances do exist in this case. As explained by Wright & Miller,

> Although courts are eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish. Law-of-the-case principles in this aspect are a matter of practice that rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards. In one classic statement, Justice Holmes noted that law-of-the-case doctrine "merely expresses

19

the practice of courts generally to refuse to reopen what has been decided, not a
limit to their power." Many decisions repeat the theme. Because the court's power
is not limited, failure to advance a law-of-the-case objection may mean that the
objection is forfeit[ed], just as failure to plead res judicata may forfeit the
protections of preclusion. But the purposes to conserve judicial resources and to
preserve the integrity of judicial processes means that a court may raise the law of
the case on its own.

18B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4478

(2d ed. 2002) (footnotes omitted) (quoting *Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739

(1912)).

Many courts have confirmed a court's ability to raise the issue of law of the case on its

own, despite the parties' failure to do so. For example, the First Circuit Court of Appeals, in

addressing whether the government waived all law of the case arguments by failing to raise them

in the district court, noted:

Frankly, we are uneasy with this dicta, which would impose a burden on us to
reconsider issues already decided. The prudential law of the case doctrine is
ultimately directed at conserving judicial resources and preserving the integrity of
our own processes. We therefore reject any intimation in our cases that we cannot
raise the law of the case issue sua sponte if we deem it appropriate.

*United States v. Wallace*, 573 F.3d 82, 90, fn. 6 (1st Cir. 2009) (citing *Ellis v. United States,* 313

F.3d 636, 647 (1st Cir. 2002); *United States v. Rivera-Martinez,* 931 F.2d 148, 149 (1st Cir.

1991); *Maxfield v. Cintas Corp. No. 2,* 487 F.3d 1132, 1135 (8th Cir. 2007); *Bollinger v.*

*Oregon,* 172 F. App'x 770, 771 (9th Cir. 2006); *DiLaura v. Power Auth. of State of New York,*

982 F.2d 73, 76 (2d Cir.1992)).

In *Bollinger* the Ninth Circuit noted that "[b]ecause the court itself has an interest

in preventing repetitive litigation, we raise the law of the case argument *sua sponte* even

though it has not been previously argued by the parties." 172 F. App'x at 771. The court

finds that it is appropriate to raise the issue with respect to this Motion.

20

**B.      The Applicability of Equitable Tolling Is the Law of the Case.**

The law of the case doctrine "posits that when a court decides upon a rule of law,  that

decision should continue to govern the same issues in subsequent stages in the same case."

*Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "The doctrine

of law of the case comes into play only with respect to issues previously determined." *Quern v.*

*Jordan*, 440 U.S. 332, 347 n.18, 99 S.Ct 1139, 59 L.Ed.2d 358 (1979) (citing *In re Sanformd*

*Fork & Tool Co.*, 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895)). The doctrine:

> is concerned with the extent to which law applied in a decision at one stage of
> litigation becomes the governing principle in later stages of the same litigation…
> Questions regarding application of law of the case arise when a party directly
> attacks a decision by attempting to have it corrected, annulled, reversed, vacated
> or declared void by the court that made it.

 *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 2008). "The law of the case doctrine

is a judicial doctrine that promotes finality and efficiency in the judicial process by encouraging

courts to follow their own decisions within any given case." *In re Pilgrim's Pride Corporation*,

442 B.R. 522, 529 (Bankr. N. D. Tex. 2010).

The Sixth Circuit has expressed its view of the "law of the case" doctrine.

> Under the law of the case doctrine, an issue that has been ruled on in a prior stage
> of a case is ordinarily considered settled and not subsequently reconsidered by the
> court; such settled issues are considered the "law of the case." However, the law
> of the case doctrine does not bar this Court from reconsidering jurisdictional
> issues. "We recognize that the law of the case doctrine is discretionary when
> applied to a coordinate court or the same court's own decisions. . . ." We have
> noted in an unpublished decision that "[i]ssues such as subject matter jurisdiction
> or appellate jurisdiction may be particularly suitable for reconsideration."

*City of Chandler Arizona v. Hosch (In re National Century Financial Enterprises, Inc. Inv.*

*Litigation),* No. 10-4194, 2012 WL 3740685, at *5 (6th Cir. Aug. 29, 2012) (quoting *Bowling v.*

*Pfizer, Inc.,* 132 F.3d 1147, 1150 (6th Cir.1998) and *In re LWD, Inc.* 335 F. App'x 523, 526 (6th

Cir.2009)).

In determining whether the court should apply the doctrine of the law of the case, the court should consider: (1) whether the issue was previously decided and (2) whether the decision was decided in the same case. *See Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002). On the first question, the court finds that the issue of the applicability of the doctrine of equitable tolling was decided.

In this case the applicability of equitable tolling was raised in Trustee's Memorandum in response to GKH's Motion for Relief. [Bankr. Case No. 08-16378, Doc. No. 1262]. As explained *supra,* the court held several hearings with the parties to determine whether the issue of equitable tolling would be ripe for decision in the Debtor's main bankruptcy case as it related to GKH's Stay Relief Motion. The court held a hearing on July 21, 2011 and July 28, 2011 during which the parties discussed their willingness to proceed with discovery pertaining to equitable tolling. During the July 28, 2011 hearing, the court noted that:

> And I have determined that I am going to grant Mr. Farinash's request for additional time to address equitable tolling. I feel like the whole issue needs to be resolved at one time. The 362 Motion is ahead of the adversary proceeding. And I am looking at – basically the time schedule I am looking at is to provide Mr. Farinash with an additional time period through the end of August to complete whatever discovery he would like on that equitable tolling issue so that we can get it all addressed at one time. And I do think if we are addressing it there then it will have an impact on the adversary proceeding. If the parties want me to combine part of it, I will be happy to entertain something on that. But I do need to go ahead and get this 362 Motion resolved.

Hearing, July 28, 2011, 10:56-58 a.m., Hearing Transcript, pp. 5-6. The court then issued a clarifying order regarding the decision to proceed with a determination on the merits regarding the doctrine of equitable tolling. [Bankr. Case No. 08-16378, Doc. No. 1373].

The court set a hearing on GKH's motion for relief from the automatic stay for October 24, 2011 after allowing the parties time to complete discovery relating to the doctrine of equitable tolling. On October 24th the court held a hearing during which the parties made oral

arguments, the court heard testimony from witnesses and reviewed documents admitted into

evidence. The parties filed briefs regarding the applicability of the doctrine of equitable tolling,

and the court issued its memorandum opinion on December 9, 2011. The District Court has

affirmed this court's decision. *In re McKenzie*, 2012 WL 4742708. The court concludes that the

first question of whether the issue has been decided is answered in the affirmative.

As to the second question – whether the decision in the Stay Relief Matter is the same

case, courts have found that for purposes of determining the "same case" adversary proceedings

in a bankruptcy case are considered to be part of the same bankruptcy case. "Generally, in the

bankruptcy context, the word 'case' is a term of art which refers to 'that which is commenced by

the filing of a petition; it is the 'whole ball of wax', the chapter 7, 9, 11, 12 or 13 case. *In re*

*Blevins Electric, Inc.*, 185 B.R. at 253 (quoting 5 COLLIER ON BANKRUPTCY ¶ 1109.02 (15th ed.

1993)).  As the Seventh Circuit has explained "[a]dversary proceedings in bankruptcy are not

distinct pieces of litigation; they are components of a single bankruptcy case, . . . ." *Cohen v.*

*Bucci,* 905 F.2d 1111, 1112 (7th Cir. 1990) (applying the ruling on an intentional fraudulent

transfer in an avoidance adversary proceeding as the law of the case in a later filed adversary

proceeding objecting to discharge on the basis of intentional fraudulent transfer); *Artra Group,*

*Inc. v. Salomon Brothers Holding Co.,* No. 95C5233, 1996 WL 637595, at *3-4 (N.D. Ill. Oct.

31, 1996) (applying ruling in a contested matter involving a valuation of a company in the

company's confirmation process as law of the case in an adversary proceeding pending in the

same bankruptcy case).

There are exceptional circumstances when the law of the case may not be followed.

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). Such "exceptional

circumstances" include: "(1) where substantially different evidence is raised on subsequent trial;

(2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.*

The first situation where the doctrine of law of the case may be inappropriate is when "substantially different evidence is raised on subsequent trial." *Westside Mothers*, 454 F.3d at 538. There has been no new evidence presented to the court that was not available on October 24, 2011 that would change the way in which the court applied the existing case law. In fact, all of the evidence for the Motion and GKH's opposition consists of transcripts from prior hearings in the case or from the testimony provided at the Stay Relief Hearing.

Another instance justifying the court's revisiting its prior ruling is when there has been intervening controlling authority that makes reconsideration appropriate. *See Westside Mothers*, 454 F.3d at 538; *Bollinger*, 172 F. App'x at 771. The parties have cited additional authorities in their memoranda that were not included in their earlier briefs. While GKH has more clearly delineated the standards which other courts have used to determine whether equitable tolling should apply, it has not provided the court with any new authority from the Sixth Circuit or the Eastern District of Tennessee that indicates that equitable tolling is no longer appropriate where the court finds there to be compelling equitable considerations. Nor is new authority presented suggesting that application of equitable tolling is no longer determined on a case-by-case basis. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). "Courts can consider any number of other factors when deciding whether the statute of limitations should be equitably tolled." *In re McKenzie*, 2012 WL 4742708, at *11 (citing *Vana v. Mallinckrodt Med. Inc.* 70 F.3d 116, 1995 WL 675597 (6th Cir. Nov. 8, 1995)).

The third "exceptional circumstance" is when the decision was clearly erroneous. *Westside Mothers*, 454 F.3d at 538.  In this case, GKH believed the court's ruling was clearly

erroneous and appealed the decision. The decision has now been affirmed. *In re McKenzie*, 2012 WL 4742708. This court sees no reason to revisit its prior decision as being clearly erroneous under the posture of this case.

Finally, the law of the case should not be applied where its application would work a manifest injustice. The court finds no unjust application of the doctrine in this case. The court made the parties aware that a ruling on the equitable tolling issue would have an impact on the adversary proceeding. They were given additional time to conduct discovery. They briefed the issue. They offered testimony and documentary evidence. They argued their positions before this court. The court wrote a lengthy opinion addressing the issue. The court's ruling was appealed, briefed, argued and ultimately affirmed by the district court. [Bankr. Case No. 08-16378, Doc. No. 1605]; *In re McKenzie*, 2012 WL 4742708. These parties have been provided a full hearing on this issue.

## IV.   Conclusion

As discussed *supra*, the court invokes the doctrine of the law of the case and finds that it has previously held that equitable tolling is applicable in this case and that the Trustee's avoidance actions are not barred by 11 U.S.C. § 546(a).  The Trustee's motion for partial summary judgment will be GRANTED.

A separate order will enter.

###